BRUNO *v.* STATE.

*(Nashville*, December Term, 1950.)

Opinion filed March 9, 1951.

(Petition for Certiorari denied by Supreme Court of United States Oct. 8, 1951)

GROVER McCORMICK, of Memphis, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiff in error was convicted of receiving and concealing stolen property, with his punishment fixed at from 3 to 5 years in the State prison, from which he appeals. He was originally indicted for grand larceny in one count and receiving and concealing stolen property in another count. At the trial the District Attorney General withdrew the count charging grand larceny and the trial proceeded against the plaintiff in error for receiving and concealing stolen property.

A plumbing concern in Memphis had approximately 4000 pounds of lead in pigs and bars stacked in its yard, the yard being surrounded by a wire fence supposedly sufficient to resist intruders. About 2000 pounds of this lead was taken therefrom by two young boys, the State's witness Bills and a boy by the name of Barron. Bills, who testifies for the State, testifies in substance that the plaintiff in error inquired of him if he wanted to make

some money and when being advised in the affirmative, told him he would have to get someone to help him and then took the witness to the place of business of this plumbing concern and showed him the lead. Bills testifies that he then got Barron and that the plaintiff in error took the two of them to this place in his, plaintiff in error's automobile, pointed out to him a ladder which was standing nearby next to a house, which they could use in getting over the fence, and that he and Barron by use of this ladder entered the premises, took about 900 pounds of lead, pushed it underneath the fence in the weeds, loaded it in the car of the plaintiff in error and hid it and then returned to get a second load which was treated in the same manner. Bills testifies that this occurred about 9:00 or 10:00 o'clock at night and that the plaintiff in error paid him $14.00 for his part in the theft. Bills is concededly an accomplice.

The record shows that the plaintiff in error who is apparently a secondhand plumbing fixture dealer, came to the office of this plumbing concern which was robbed and after inquiring for certain secondhand plumbing fixtures, inquired of them as to where their lead was located and that it was shown him. Shortly thereafter, plaintiff in error called State's witness Seaman, who operated a plumbing concern, and offered to sell him lead at a price which was 5¢ or 6¢ under the market price. Seaman became suspicious and notified the police authorities and had them at his place of business when the plaintiff in error appeared with the carload of lead. Both Seaman and the police officer say that the plaintiff in error state that the lead, which was in his car at the time, was some that he had had for a long time. The officer testifies that finally the plaintiff in error admitted that he had obtained the lead from two boys whose names

he did not know at the time but that he would put the officers in contact with them. The record also shows that the plaintiff in error undertook to sell and did sell some of this lead to another plumbing concern and that when he was being taken from Seaman's place by the arresting officer to police headquarters that the plaintiff in error jumped out of the car and ran but was soon recaptured by the officer.

The plaintiff in error did not testify but introduced testimony by an attorney whom he had called to the police station to show that he had been promised immunity from prosecution if he would reveal the source of his acquisition of the lead. He also introduced testimony tending to contradict the testimony of Bills, the accomplice.

This attorney testifies that after plaintiff in error had retained him in the matter that he had some conversation with the Chief of Detectives who was investigating this theft and made certain agreements with him and then when he returned to the police station afterwards, he found the plaintiff in error there in conference with this detective. According to his testimony the detective was trying to get plaintiff in error to tell them who had stolen the lead and promised him that if plaintiff in error would tell them this that the plaintiff in error would be turned loose and not prosecuted. This attorney then says that on the basis of this promise he advised the plaintiff in error to tell the Detectives the full truth about the matter and then upon this advice the plaintiff in error did tell them where he got the lead and who the boys were and assisted the detectives in finding these two boys.

The assignments raise primarily the insistence that the evidence preponderates against the verdict of the jury; that the trial court erred in admitting evidence of con-

versations between the accomplice Bills and the Police Department; that the plaintiff in error's constitutional rights had been violated because there could have been no conviction in the case except for the promise of the Police Department and the officers thereof who were in charge of this investigation that plaintiff in error would be given complete immunity if he would disclose the names of those who actually committed the larceny.

We are satisfied that the story of the accomplice Bills has been sufficiently corroborated by the unquestioned evidence that on the day before the trial the plaintiff in error was there where the lead was and the lead was shown to him; that he sold part of this lead to another party; that he attempted to sell another part of it to the witness Seaman. It seems too that the fact that he ran after he was apprehended at Seaman's place of business is further evidence that could be considered by the jury as to the guilt of the plaintiff in error. Of course his efforts to dispose of the lead at considerably less than the market price was some evidence for the jury's consideration and then his false statements to the police after he was apprehended as to where he got the lead was other evidence which would tend to show his guilty knowledge and to corroborate the testimony of the accomplice. This case resembles very much the case of *Zachary* v. *State,* 144 Tenn. 623, 234 S. W. 758, wherein the evidence was held sufficient to justify a finding of guilty knowledge.

As to the insistence that the trial court erred in admitting evidence of conversations between the accomplice and the arresting officers, we note that prior to the officer making any statements as to what these boys told him the district attorney general said: "Do you want him to tell what the boys told him? Mr. McCormick: It

doesn't make any difference to me." It was after this statement that the City Detective made the statement to the jury as to what these boys told them as to their arrangement with the plaintiff in error and as to the actual theft of the lead. It was after all of this story of the theft was in that an objection was made by plaintiff in error's counsel. As soon as objection was made the court sustained the objection. There was no request and the jury was not instructed to disregard these previous statements which had been admitted by consent.

The principal argument and contention of the plaintiff in error is that the promises of immunity and the information given to the detectives was made upon an agreement through, with and by the plaintiff in error and his counsel, that if he gave the names of persons from whom he bought the stolen merchandise that he would not be prosecuted. There is no objection in the record to any testimony based on such a contention. We do not therefore have a case of where a confession either oral or written is introduced which was obtained by the hope of a reward. In such instances we have held in this State that such a confession or any evidence obtained thereby would not be admissible. *Cross* v. *State*, 142 Tenn. 510, 221 S. W. 489, 9 A. L. R. 1354.

All that we have here is evidence obtained by cross examination of the detectives and offered by an attorney on behalf of the plaintiff in error that the plaintiff in error gave the State certain evidence as to who had committed the theft of the articles involved upon the promise and distinct understanding that he would be granted immunity. This contention is answered by the quotation following: ''In the absence of a statute providing for immunity, the fact that a participant or accomplice in the commission of a crime testifies or agrees to

testify on behalf of the prosecution, fully and fairly disclosing the guilt of himself and his associates, with the understanding or promise, express or implied, that he will be granted a pardon or will not be prosecuted for his offense *does not* entitle him to a pardon or immunity as a matter of right; and such facts may not be pleaded in bar of a prosecution." 22 C. J. S., Criminal Law, Section 46, page 105. We have no such statute in this State granting immunity to an accomplice who gives the State aid in the prosecution or apprehension of his co-workers in crime. Probably the leading case in the United States on the question is *U. S.* v. *Ford,* 99 U. S. 594, 25 L. Ed. 399.

Therefore, as we view the matter, since there is no statute on the subject in this State, there is nothing that we as a Court can or should do about this promise of immunity that the plaintiff in error claims. Normally where such a promise is made in good faith and the party who then cooperates and gives the State the necessary assistance the district attorney general may with the consent of the trial court take care of the matter, but when it has not been done in this way the only thing that we know that can be done is that the Chief Executive must be convinced that this is a case for the lending of his pardoning power.

For the reasons thus stated, we must affirm the judgment below.

All concur.