THOMAS R. POWELL

*v.*

STATE OF TENNESSEE

352 S. W. 2d 224.

(*Knoxville,* September Term, 1961.)

Opinion filed December 8, 1961.

WILLIAM R. FERGUSON, Chattanooga, for plaintiff in
error.

THOMAS E. FOX, Assistant Attorney General, for the
State.

MR. JUSTICE BURNETT delivered the opinion of the
Court.

Powell was indicted in a three count indictment, charg-
ing (1) that he stole an automobile, (2) that he received
and concealed the automobile after it had been stolen,
(3) he did take and carry away the personal property of
the named owner of the car. He was convicted under the
second count of receiving and concealing, and sentenced
to serve three (3) years in the State penitentiary. From
this conviction he has seasonably appealed and argu-
ments have been heard pro and con. We now have the
matter for disposition.

The assignments are essentially divided into two cate-
gories: (1) that the evidence preponderates against the
verdict and in favor of the innocence of the accused, and
(2) that the trial judge erred in refusing to admit testi-
mony to show that after the plaintiff in error's arrest
and indictment prior to trial the Assistant District Attor-

ney General had agreed with counsel representing the plaintiff in error that the charges of larceny and receiving and concealing would be dismissed if the plaintiff in error entered a plea of guilty to the offense of drunk driving and paying a fine therefor.

The bill of exceptions is in narrative form and shows that the officers around midnight on April 16, 1960, noticed an automobile being driven on the Signal Mountain Road about two blocks west of Dayton Boulevard at Valdeau; that it was being driven in such a manner as to indicate that the driver was under the influence of an intoxicant. These officers followed the car for two blocks until he stopped at a service station and then drove up to it and found that the plaintiff in error was the driver of the automobile. He was arrested for driving while drunk. (He was very much under the influence of an intoxicant.) They then asked the driver who was the owner of the car, and a passenger who was with the plaintiff in error advised the officers that it belonged to the plaintiff in error. The plaintiff in error said that it belonged to a friend, whose name he did not know.

■■ The passenger in the car was released and after investigating the car they found the name of the purported owner on the steering wheel of the car. This purported owner was later contacted and she verified the fact that the car belonged to her, but knew nothing of it having been stolen until the fact was reported to her. This lady, who was the owner of the car, testified to that fact, that it had been stolen and that she did not know it until officers reported to her. The car had been "hot wired". These words, "hot wired", mean that the car was not being operated by means of a switch key

but that wires under it had been taken from one part of the car to another and wired under it so it would run without using a key. This fact in itself under normal conditions clearly shows that it had been stolen.

The plaintiff in error testified in his own behalf and said that he worked with the passenger he had in the car with him in a small coal mine near Chattanooga; that on the day before the car was stolen this passenger informed him that he, the passenger, expected to borrow a car from his father and asked the plaintiff in error to go riding with him. The plaintiff in error declined the invitation and left his work about 2:00 o'clock, sick. He remained at his home with his mother until about midnight when the passenger of the car drove by his home two or three times, finally stopping and asking the plaintiff in error to ride to town with him. The plaintiff in error said that he accepted this invitation for the purpose of talking to a relative in East Chattanooga about helping him make a new entry in the coal mine. He says that when they came within about two blocks of where they were apprehended the passenger was then driving the car and drove off the shoulder of the road and asked the plaintiff in error to drive so that this passenger could check the volt meter on the car. The plaintiff in error says that he drove these two blocks and stopped at the service station at which time he was arrested. He says that his passenger drove these two blocks with his head under the dashboard and he, the plaintiff in error, assumed that he was working on the volt meter. He denied knowledge of the fact that the car was "hot wired". He further says he had drunk about three bottles of beer in the afternoon and before leaving with the passenger about midnight.

Counsel appointed at that time to represent the plaintiff in error in court offered and attempted to show that he had an agreement with the Assistant District Attorney General to the effect that if the plaintiff in error would enter a plea of guilty of driving while under the influence of an intoxicant and pay a fine of $50.00 and costs, that all charges of larceny and receiving and concealing, etc., would be dismissed. The trial judge did not accept evidence on such an issue.

The evidence to support the conviction, that is receiving and concealing which was accepted by the jury, is in our judgment sufficient to convict of such a crime. The argument, of course, of the plaintiff in error is that there is absolutely no evidence of receiving and concealing but the only evidence is that there was a theft, and the plaintiff in error relies on *Franklin v. State,* 202 Tenn. 666, 308 S.W.2d 417, as authority for this position. In the Franklin case this Court found that there was absolutely no evidence of receiving and concealing, and that the only evidence was that of theft and thus reversed the conviction under receiving and concealing. The present case though and the factual situation to be hereinafter briefly reviewed is more in line with that of *Edmondson v. State,* 151 Tenn. 214, 268 S.W. 881. In that case this Court quoted from recognized authorities on the question of receiving and concealing and what was sufficiently necessary to prove the offense to the effect that it must be shown that the person thus charged must have such control over the property that it amounts to constructive possession and that said property prior thereto must have been stolen from its lawful owner; that by the making of false statements by the there accused relative to the ownership of the car when such statements were

made for the purpose of preventing the officers and expected purchasers from determining that the automobile had been stolen, then this was sufficient evidence to justify a conviction of receiving and concealing.

■ In this case the evidence clearly shows that plaintiff in error was in possession of the automobile and that the passenger who was riding with him told the officers, apparently in his presence, that the car belonged to the plaintiff in error. The proof shows that the plaintiff in error made a statement to the officers that the car belonged to a friend (he not knowing the friend's name), and the fact that the car was "hot wired" rather than being operated by the use of a switch key, all are factual situations for the jury to take into consideration. This body clearly under such factual situation could have found, and the evidence does not preponderate to the contrary and in fact convinces us of the truth of it, that the man knew that the car had been stolen and was trying to cover up the fact that he was in possession of it. The evidence did not show here that he had stolen the car, but merely showed that he was in possession of stolen property and was trying to cover it up. Thus, clearly, the evidence does not preponderate against the verdict.

The fact that the plaintiff in error was in an intoxicated condition when he was found in possession of this property under these circumstances is no defense to a crime of the kind. *Thomas v. State,* 201 Tenn. 645, 301 S.W.2d 358.

■ The very interesting question posed here was the second set out and shown in the assignments that there had been an agreement with the Assistant District Attorney General to nolle the indictment under which the con-

viction was had if the plaintiff in error would plead guilty to drunk driving. This defense is very close kin to that as set up in *Bruno v. State,* 192 Tenn. 244, 240 S.W.2d 528, certiorari denied by the Supreme Court of the United States, 72 S.Ct. 68, 342 U.S. 840, 96 L.Ed. 635, wherein immunity was claimed for Bruno on behalf of his agreeing to testify about the facts of the case in the prosecution of others. This Court held that such an immunity was not a judicial question and denied the defense.

The following quotation from 22 C.J.S. Criminal Law sec. 53 at page 192, answers this objection. The author says:

> "An agreement by a prosecuting official or a law enforcement officer to dismiss the charge against accused or grant his immunity from prosecution in return for a plea of guilty, or certain co-operative measures by accused, is not binding on the court and is no defense to the prosecution. Thus an agreement between a prosecuting attorney and an accused charged with several offenses that if he pleads guilty to one charge he will not be prosecuted on the other charges is not a binding agreement, it has been held, so far as to bar a later prosecution on one of such other charges, although there is authority holding that such an agreement when approved by the court and fulfilled by the accused, should be given effect."

When we read earlier in this same section we find that the courts have held where there is an agreement with the grand jury not to indict him if he promises not to commit further violations is not a defense; where proof of one crime is necessary to prove related crimes an accused cannot claim that he has been prosecuted for

the wrong offense. Such a defense is not maintainable and for good reasons. We accept the quoted statement above as the applicable rule to apply under such situations.

Section 40-2101, T.C.A., provides in effect that after a person has been indicted such a prosecution cannot be dismissed, discontinued, etc., without leave of court. The court here denied such leave. Evidently the Assistant District Attorney General did not offer to do so unless certain obligations were carried forward by the plaintiff in error, which according to the record there is no showing one way or the other, therefore this defense is not available and the record does not support a state of facts which would indicate that the rule alluded to in the Bruno case might be applicable.

After a thorough consideration we are convinced that the judgment below must be affirmed.