**STATE of Tennessee, Appellee,**

v.

**Nancy JACOBS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 15, 1995.

H.R. Fallin, Wilson & Fallin, Mountain City, for Appellant.

Charles W. Burson, Attorney General and Reporter, Amy L. Tarkington, Assistant Attorney General, Criminal Justice Division, Nashville, David E. Crockett, District Attorney General, William R. Mooney, Assistant District Attorney General, Jonesborough, for Appellee.

## OPINION

WHITE, Judge.

In this case, we are called upon to determine whether immunity agreements between prosecutors and defendants are enforceable in the state of Tennessee. We conclude that they are and reverse this case.

Appellant Nancy Jacobs was charged by a Washington County Grand Jury with facilitating and aiding in the commission of first-degree murder. Appellant filed a motion to dismiss the indictment based upon an immunity agreement entered into with the state. The court held several hearings, but took no evidence on the matter. After the final hearing, the criminal court judge overruled appellant's motion to dismiss and entered an order granting an interlocutory appeal pursuant to Tennessee Rules of Appellate Procedure 9. This court granted permission for that interlocutory appeal.

This record consists totally of representations of counsel, statements of appellant and witnesses, and the trial court's decision. It appears that the district attorney general granted appellant Nancy Jacobs "immunity from prosecution in the homicide of Charles James Davis" on November 19, 1991. This written grant of immunity was subject to three conditions. First, appellant was required to "fully and truthfully" furnish the Tennessee Bureau of Investigation investigators with all information requested. Second, the grant of immunity was based upon an understanding that appellant "is not a direct participate [sic] nor did she procure the death of Charles James Davis." Lastly, the immunity was conditioned upon appellant's full cooperation in the investigation of the homicide and her appearance to testify in any trial regarding the homicide.

Following the grant of immunity, appellant apparently gave statements regarding the homicide to agents of the Tennessee Bureau of Investigation and the Washington County Sheriff's Department. Alton Jacobs, identified in appellant's statements, was apprehended and charged with the first-degree murder of Charles James Davis. Subsequently, appellant was charged with facilitating "by furnishing substantial assistance to" or aiding Alton Jacobs in the murder.

In ruling on appellant's motion to dismiss the indictment, the trial court reviewed written statements of Alton Jacobs, Nancy Jacobs, Norman Warren, and Judy Cooper. Concluding that appellant had breached the immunity agreement, the court denied the motion. The court summarized its findings as follows:

> After considering the hearings that we have had ... and after reading the transcript of other hearings, depositions, statements of witnesses, and my recollection of the testimony in the case of State versus Alton Jacobs, the Court hereby finds that the defendant has violated her agreement with the State in that she might have been a direct participant or the procurer of the death ... and that she has failed to fully cooperate in the investigation of the murder.

The court further explained that the "ruling is by a preponderance of the evidence but not beyond a reasonable doubt.... I don't know beyond a reasonable doubt." In this interlocutory appeal, appellant challenges that holding.

It is the state's position that grants of immunity are unenforceable in the state of Tennessee. The state relies on the Tennessee Supreme Court case of *Bruno v. State*, 192 Tenn. 244, 240 S.W.2d 528 (1951), *cert. denied*, 342 U.S. 840, 72 S.Ct. 68, 96 L.Ed. 635 (1951). Bruno had arranged for two young boys to steal some lead from a plumbing establishment in Memphis. After demonstrating how the theft could be accomplished and loaning his automobile, the boys transported the stolen lead. Thereafter, defendant began to sell the lead considerably under market prices. The buyers became suspicious and contacted the police. Upon arrest, defendant told various stories, but eventually admitted he had obtained the lead from two boys whom he claimed not to know.

At trial, defendant did not testify. However, he presented the testimony of an attorney who explained that a detective with whom defendant was communicating, had promised "that defendant would not be prosecuted if he would name the thief of the lead." On the

basis of this promise, the attorney advised defendant to tell the detectives the full truth about the matter. Once defendant did so, the boys were apprehended and arrested.[1] Bruno was convicted of receiving and concealing stolen property and sentenced to three to five years.

On appeal, Bruno argued that his constitutional rights were violated because he was promised complete immunity upon his disclosure of the names of the thieves. In ruling on the issue, the Supreme Court quoted from *Corpus Juris Secundum:*

> In the absence of a statute providing for immunity, the fact that a participant or accomplice in the commission of a crime testifies or agrees to testify on behalf of the prosecution, fully and fairly disclosing ... guilt ... with the understanding or promise, expressed or implied, that he [or she] will be granted a pardon or will not be prosecuted for his [or her] offense *does not* entitle him [or her] to a pardon or immunity as a matter of right; and such facts may not be pleaded in bar of a prosecution.

22 C.J.S. Criminal Law § 46, p. 105. The Court then denied relief because no statute grants immunity to an accomplice based upon a promise related to cooperation. In conclusion, the Court stated:

> Normally where such a promise is made in good faith and the party who then cooperates and gives the State the necessary assistance the district attorney general may with the consent of the trial court take care of the matter, but when it has not been done in this way the only thing that we know that can be done is that the Chief Executive must be convinced that this is the case for the lending of his [or her] pardoning power.

240 S.W.2d at 531. Based on this authority, the state of Tennessee asserts that immunity agreements are unenforceable in Tennessee. Appellant, on the other hand, urges only that we reverse in light of the court's use of a preponderance standard to determine whether the immunity agreement was breached. While defining and applying the appropriate standard is important, we must first address the threshold issue as to whether immunity agreements in any form are enforceable in Tennessee.

At oral argument, the state willingly conceded that most defendants who enter immunity agreements with prosecutors are unaware that the agreement is revokable at the whim of the prosecution. They further acknowledged that offering grants of immunity to testifying defendants is a significant component of the state's bargaining power. And while it is somewhat speculative, the state recognized that the absence of this tool might hamper the investigation and prosecution of criminal offenses. Therefore, at the least, compelling policy reasons support the recognition and enforcement of immunity agreements.

We have attempted an exhaustive review of all Tennessee cases dealing with immunity agreements and those cases upon which they rely. The historical roots of immunity date to English common law. The most cited case, *Rex v. Rudd,* 1 Cowp. 336 (15 George III, B.R. 1775), was a decision in which the judges referred to immunity as "merely an equitable claim to the mercy of the crown." The judges concluded:

> in cases not within any statute, an accomplice, who fully and truly discloses the joint guilt of himself and his companions, and truly answers all questions that are put to him, and is admitted by justices of the peace as a witness against his companions, and who, when called upon, does give evidence accordingly, and appears under all the circumstances of the case to have acted a fair and ingenuous part, and to have made a full and true information, ought not to be prosecuted, for his own guilt so disclosed by him, nor, perhaps, for any other offense of the same kind, which he may accidentally, and without any bad design, have omitted in his confession. But he cannot by law plead this in bar to any indictment against him, nor avail himself of it upon his trial; for it is merely an equitable claim to the mercy of the crown, from

---

**1.** We recognize the distinction between Bruno's "agreement" with a detective and Jacobs' agreement with the prosecutor.

the magistrates express or implied promise of an indemnity, upon certain conditions that have been performed: it can only come before the court by way of application to put off the trial, in order to give the prisoner time to apply elsewhere.

*Rex v. Rudd,* 1 Cowp. 336, 340. While some states continue to follow this approach, others, based on the strong policy reasons supporting immunity agreements, consider immunity a right.

From the earliest times it has been found necessary, for the detection and punishment of crime, for the state to resort to the criminals themselves for testimony with which to convict their confederates in crime. While such a course offers a premium to treachery, and sometimes permits the more guilty to escape, it tends to prevent and break up combinations by making criminals suspicious of each other, and it leads to the punishment of guilty persons who would otherwise escape. Therefore, on the ground of public policy, it has been uniformly held that a state may contract with a criminal for ... exemption from prosecution, if he [or she] shall honestly and fairly make a full disclosure of the crime, whether the party testified against is convicted or not. If [the] testimony is corrupt, or [the] disclosure is only partial, he [or she] gains nothing, but forfeits [the] right under the contract. The only difficulty in the matter seems to be as to the method in which the state may extend the promised and earned immunity.

*Camron v. State,* 32 Tex.Crim. 180, 22 S.W. 682 (1893).

Until recently, the most recent Supreme Court case which arose out of a police officer-defendant agreement suggested our continued adherence to the *Rex v. Rudd* principle, with some equivocation. While concluding that the absence of legislation made the agreement unenforceable, the Court nonetheless recognized the inherent equities required by these situations when promises are made in "good faith." 240 S.W.2d at 531. Under those circumstances, the Court advised that the district attorney "may with the consent of the trial court take care of the matter." *Id.* Since trial courts are not re-

quired to consent to a prosecutor's recommendation for clemency or pardon (i.e., "the mercy of the crown"), the Court arguably was recognizing the right in appropriate cases to enforce the immunity agreement. To the extent that the Court was recognizing that right in appropriate cases, we find that this is an appropriate case.

■ Most recently, however, our Supreme Court took a definitive stance overruling *Bruno* in the case of *State v. Howington,* 907 S.W.2d 403 (Tenn.1995). There, the court declared that agreement between prosecutors and defendants are contractual in nature and enforceable under the law of contracts.

In this case there is no dispute that a written immunity agreement was entered into between the state and the defendant. Exhibit 15, entitled "Grant of Immunity From Criminal Prosecution" is not ambiguous. It is a statement signed by the district attorney general granting immunity subject to three conditions. It contains the signatures of appellant and her attorney. Further, the criminal court judge implicitly found that the parties had entered into an agreement and that appellant "has violated her agreement with the State...." Thus, we conclude that the promise to grant immunity was made in good faith. The trial court obviously consented to the agreement. It is enforceable upon compliance with the conditions.

Our remaining question is whether appellant complied with the conditions of the agreement. The state contended and the court found that appellant did not because she "might have been a direct participant" in the murder and because she "failed to fully cooperate." Our inquiry is two-fold. First, we must determine the correct standard of proof; secondly, we must determine the facts.

■ Appellant argues that the court erred in utilizing a preponderance of the evidence standard to determine whether appellant complied with the conditions of the agreement. She supports her argument with authority from Texas, *Zani v. State,* 701 S.W.2d 249 (Tex.Crim.App.1985). That case analyzes the appropriate standard of proof by

recognizing that immunity, though not a defense under the Texas Criminal Code, is analogous to a defense. Therefore, the Texas court outlined the procedure accordingly: "[t]he initial burden is on the defendant to show the existence of an agreement by a preponderance of the evidence.... [O]nce the initial burden is met and the existence of an immunity agreement is shown by a preponderance of the evidence ... the burden then shifts to the State to show beyond a reasonable doubt why the agreement is invalid or why prosecution should be allowed despite the agreement." *Id.* at 254 (citations omitted).

We are persuaded that the Texas court has correctly defined the burden of proof. To hold the state to a mere preponderance standard to invalidate a proven agreement would result in anomalous situation when the state had sufficient evidence to void the agreement but not to convict. *Id.* at n. 3.

■ Applying the standard, we find that appellant proved by a preponderance of the evidence the existence of an agreement. The trial court found a violation of that agreement by a preponderance of the evidence but concluded that he "did not know" whether the state had satisfied him beyond a reasonable doubt that the agreement was violated.

■ We have carefully studied all that the court reviewed in this case. We conclude that the state has not established beyond a reasonable doubt that appellant failed to cooperate or was an active participant in the murder.

First, the only indication that appellant did not cooperate is the suggestion that she did not tell the investigators all she knew. We note that the interviews were in question and answer form. None of the questions were unanswered. Any clarifying questions posed were responded to. The only basis for the state's argument are the minor inconsistencies between appellant's statements and those of other witnesses. However, the record of paper interviews provides no basis for concluding which witness should be believed. Certainly, there is no basis for determining beyond a reasonable doubt that appellant failed to testify truthfully and fully. Further, although the court relied on depositions, transcripts of other hearings, and evidence in another murder case, the state filed none of those exhibits with this record.

None of the principles which generally govern credibility determinations can be considered in this case. The court could not ascertain the witness' demeanor, candor, or forthrightness as they testified. No bias, perception difficulties, or motives could be revealed in a careful, skilled cross-examination and no reaction to inconsistent statements or facts could be noted. When the state chose to present no evidence at the motion hearing, it greatly hampered its ability to establish that the immunity agreement, which it certainly endorsed as enforceable, was violated.

The same analysis is applicable to the finding that appellant was an active participant in the murder. The statements which we have before us only establish a disagreement on that point. We cannot say that they establish a breach beyond a reasonable doubt. Further, we assume that the court's review of unfiled transcripts and the evidence in the other trial contributed to its finding, but as we have noted the state chose not to file those documents for our review.

The trial judge's statements indicated that he would have difficulty with his conclusion were a reasonable doubt standard appropriate. We have that same difficulty.

We, therefore, conclude that appellant's motion to dismiss should have been granted. She must continue to comply with the conditions of her agreement which require full cooperation and full and truthful testimony. Should the state, at some later juncture, be able to prove beyond a reasonable doubt that she has not fulfilled a condition, prosecution may be sought. Accordingly, the judgment of the trial court is reversed.

WADE and SUMMERS, JJ., concur.