IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 19, 2015

**STATE OF TENNESSEE v. RANDY LANE**

**Direct Appeal from the Criminal Court for Knox County**
**Nos. 90647, 90648, 90649, 90650, 90651, 90652      Bobby R. McGee, Judge**

_____

**No. E2014-01117-CCA-R3-CD – Filed December 7, 2015**

_____

After a bench trial, the Knox County Criminal Court convicted the appellant, Randy Lane, of five counts of aggravated burglary and six counts of felony theft of property and sentenced him to a total effective sentence of eight years.  On appeal, the appellant challenges the trial court's denial of his motion to suppress his statement, arguing that he made the statement as part of a plea agreement that turned out to be unenforceable.  The State responds that the appellant is not entitled to relief because the State and the appellant entered into a subsequent agreement, which he materially breached.  Based upon the record and the parties' briefs, we agree with the appellant that the trial court should have granted his motion to suppress.  Therefore, his convictions are reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Reversed, and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Alexander Brown (on appeal) and Steve Sams (at trial), Knoxville, Tennessee, for the appellant, Randy Lane.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Charme P. Allen, District Attorney General; and Claude Leon Franks and Patricia Cristil, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I.  Factual Background

On December 5, 2006, the appellant pled guilty in the Knox County Criminal Court to one count of aggravated burglary and two counts of burglary of a vehicle.  The plea agreement provided that the appellant would receive a total effective sentence of five years, which he would serve consecutively to a previously imposed four-year sentence.  The plea agreement further provided that the appellant would apply for probation.  While the appellant's probation application was pending, he was released on bond.

In December 2008, the Knox County Grand Jury returned indictments, charging the appellant with a total of five counts of aggravated burglary, a Class C felony; one count of theft of property valued $60,000 or more, a Class B felony; three counts of theft of property valued $10,000 or more but less than $60,000, a Class C felony; and two counts of theft of property valued $1,000 or more but less than $10,000, a Cass D felony.  On September 15, 2009, defense counsel filed a motion to suppress the appellant's confession to the eleven crimes, contending that it was not knowingly or voluntarily made due to "unfair and deceptive tactics" by police officers.  Specifically, the appellant alleged that he was led to believe that the officers interrogating him had the authority to "plea-bargain," which resulted in the confession.

At the September 16, 2009 suppression hearing, Detective Steve Webb of the Knox County Sheriff's Department testified that one or two days before November 19, 2008, he was notified that the appellant had been taken into custody by the Bradley County Sheriff's Department.  At the time of the appellant's arrest, he allegedly was in possession of property that had been stolen from Knox County residents.  Detective Webb drove to Bradley County to speak with the appellant.  The appellant asked Detective Webb to "solicit a plea deal" from the district attorney's office in which he would plead guilty to "[s]ix felony burglaries" in exchange for serving the new sentences concurrently with the previously imposed nine-year sentence.

Detective Webb testified that he telephoned Knox County Assistant District Attorney General Jennifer Welch.  General Welch told Detective Webb that based on what he was telling her, "that we could offer that to him."  Detective Webb acknowledged that he "passed that along to" the appellant and that everyone intended for the appellant to plead guilty to six new burglaries and receive sentencing concurrent with the nine-year sentence.  Subsequently, Detective Webb arranged for the appellant to be released into his custody on the morning of November 19 so that the appellant could ride with him, point out the locations of the burglaries, and disclose where the stolen property was sold.

Detective Webb testified that about 6:30 a.m. on November 19, he and Detective Ashley Coulter went to the Bradley County Jail to retrieve the appellant. Detective Webb said that before they left the jail with the appellant, he advised the appellant of his rights. The officers then drove the appellant to Knox County, and the appellant identified the locations of his crimes. As they drove, Detective Coulter made a list of the addresses on a statement form, which became the appellant's confession. Detective Webb said that after they returned the appellant to the Bradley County Jail, General Welch informed him that "she had found out that all the facts were not correct in this" and that he needed to speak with Knox County Assistant District Attorney General Patricia Cristil, who was handling the appellant's case.

The appellant's statement form was introduced into evidence. At the top of the form, the detectives wrote: "Per Knox County DA's office - Randy Lane will be charged with no more than six felony charges - any sentence he may receive will run concurrent with the nine year sentence. Mr. Lane advised he has already been sentenced to nine years in Knox County TN." A list of twenty-eight addresses is in the middle of the statement form, and the appellant initialed each address. At the bottom of the statement form, the detectives wrote: "Randy Lane - pointed out the above listed locations inside Knox Co. and advised he had either stole property/broke into the residence and stole property." The appellant initialed that provision and signed the statement form. An advice of rights form is on the back of the statement form. The appellant initialed each of his rights and signed the form.

On cross-examination, Detective Webb testified that he was the lead investigator in this case and that he was just the "messenger" for the appellant's "deal" with the district attorney's office. On the morning of November 19, the appellant would not leave the jail with the detectives until they wrote the agreement on the appellant's statement form. Detective Webb said that "that was verbatim what [the appellant] wanted written down." Detective Webb later learned that the appellant had pled guilty in a previous case but that he had not yet been sentenced. He acknowledged that he did not "deliberately try to mislead Mr. Lane about the statement or [his] intentions in those cases."

General Cristil testified that she discovered after the agreement that the appellant had pled guilty but had not yet been sentenced for the previous Knox County offenses and that he was still on bond when he committed the felony offenses in the instant case. The appellant could not serve the new felony sentences concurrently with the previous felony sentences, and she informed Detective Webb of that fact.[1] Nevertheless, she tried

---

[1] See Tenn. Code Ann. § 40-20-111(b) (mandating consecutive sentencing when a defendant commits a felony while one bond for a felony and is convicted of both offenses); Tenn. R. Crim. P.

- 3 -

to honor the agreement by offering to charge the appellant with misdemeanors he could serve concurrently. She conveyed the offer to the attorney representing the appellant at the time but was unable to recall which of the appellant's attorneys was given the offer.[2] The trial court asked if the attorney communicated the offer to the appellant, and General Cristil said she did not know. The trial court then asked if the appellant accepted the offer, and she stated, "Nobody ever accepted it[.]"

General Cristil testified that the appellant had a sentence in Bradley County for which judgment had not yet been entered. Defense counsel requested that the appellant be allowed to return to Bradley County to resolve the charges, and the State agreed. General Cristil stated that the State intended to put "a hold on him, and then when they had finished with whatever they were doing in Bradley County, he would come back to Knox County and that was the basis upon which we all agreed that he could go to Bradley County." However, Knox County did not issue the capias before the Bradley County matter was concluded, and the Bradley County Jail released the appellant. General Cristil said she withdrew the offer because the appellant absconded and failed to return to Knox County.

At the conclusion of the hearing, the trial court found that the appellant mistakenly thought he had already been sentenced in the previous Knox County case and that his telling Detective Webb about the nine-year sentence was due to honest confusion, not deception. The court further found that the State evidenced no misconduct in taking the confession and that the State acted in good faith. Accordingly, the court denied the motion to suppress.

Subsequently, defense counsel filed a motion to enforce the initial agreement in which he argued that pursuant to State v. Howington, 907 S.W.2d 403 (Tenn. 1995), the appellant was entitled to the benefit of the agreement or to the suppression of his statement because he performed his part of the agreement but the State failed to perform its part. At a hearing on October 20, 2009, defense counsel argued that the appellant had fulfilled his part of the agreement. The State countered that the appellant materially and substantially breached the agreement when he absconded and committed other crimes after being released from the Bradley County Jail. Defense counsel advised the court that the Bradley County Jail "kick[ed the appellant] out" and that "then he showed up here and they said, no, we can't take you" because no capias had been issued.

The trial court observed that the initial agreement, which provided that the new

32(c)(3)(C) (also mandating consecutive sentencing when a defendant commits a felony while on bond for a felony and is convicted of both offenses).

[2] The record does not reflect when counsel began to represent the appellant, but it is undisputed that counsel was not present during the appellant's interactions with Detective Webb.

felony sentences would be served concurrently with the previous felony sentences, was illegal and, therefore, unenforceable. As to the subsequent agreement for a plea to misdemeanors, the court noted that the appellant knew "the name of the detective that he gave his confession to who was supposed to be brokering this deal, and [had he] really been sincere about wanting to come back here and get these matters resolved that's all he had to do is call the detective." The court found that it was the appellant's "own misconduct that resulted in that agreement not coming to fruition or not being consummated." Therefore, the court denied the motion to enforce. The court then stated that it may have been "too narrow" by considering only the effect of the agreement on the voluntariness of the statement. Accordingly, the court urged the parties to file another motion to suppress regarding the <u>Miranda</u> warnings and waiver, noting that "if he was flat out told that he was going to get concurrent sentencing then maybe, I'm not sure, but maybe that does affect the knowing quality of his waiver."

On November 10, 2009, defense counsel filed a second motion to suppress, contending that the trial court should grant the motion because the State could not fulfill the terms of the agreement. In a memorandum of law attached to the motion, defense counsel argued as follows:

> In the present case, though the plea offer was made by the State and accepted by [the appellant], and [the appellant] acted to his serious detriment in waiving his rights against self-incrimination and then providing incriminating information in reliance upon the agreement and promises made by the State, and its authorized agents. This was not a plea agreement actually accepted by a court, but its very existence was found and ratified by this Honorable Court during two distinct in-Court motions hearings. The State now contends it is an unenforceable agreement because specific performance of the agreement would result in an illegal sentence, and / or a void judgment. This Honorable Court agreed it was unenforceable.

> However, it was a State prosecutor who defined the terms of the agreement and the offer to [the appellant]. This unrepresented [appellant] was in no better position than the State to evaluate the legality of the offer the State had proposed to him while he was within the State's custody. It is not reasonable to conclude [the appellant] would still have knowingly waived his rights against self-incrimination and provided incriminating information voluntarily had he

suspected the agreement with the State was illegal, unenforceable, and of no value to him. To the contrary, [the appellant] specifically sought an enforceable and reliable agreement with a State prosecutor in exchange for waiving his rights. This unrepresented [appellant's] (in-custody) waiver and subsequent statements were provided in reasonable reliance upon *this* agreement and in exchange for *this* agreement and for promised performances on the part of the State.

Defense counsel argued that suppressing the statement would restore the parties to the position they were in before the agreement.

In a written response, the State maintained that on March 28, 2008, the appellant asked to return to Bradley County to resolve issues there. The appellant was released by Bradley County before the capias was issued on March 31, 2008. The State said that "immediately following his release from Bradley County, [the appellant] called the Knox County Criminal Court Clerk and said that he would turn himself in. He did not do that and was not brought into custody until April 18, 2008." The State argued as follows:

There was no ambiguity in the State's offer to charge the [appellant] with misdemeanor thefts instead of felonies. There should be no question that the offer was based on the [appellant's] not committing additional crimes and the [appellant's] following the rules of good behavior and citizenship. The [appellant] breached those standards, as well as the favorable agreement with the State, when he left the county and failed to turn himself in knowing full well that a capias was outstanding for his arrest. The [appellant] has no one to blame but himself for the State's withdrawal of the misdemeanor offer.

In a written order, the trial court found that the appellant "was not a stranger to the criminal justice system" and that he "certainly understood that he would not receive concurrent sentencing unless he pled guilty. Yet when he was released he absconded and is back in custody only because he was arrested on new charges." The court found that the appellant understood that the consequence of the confession "would be that it would be used against him to prove his guilt." The court stated that the agreement regarding "concurrent sentencing was in return for the [appellant's] promise to enter guilty pleas and the [appellant] failed and refused to do so." The court found that based upon the appellant's breach of the agreement, the State was relieved of its promise to seek

concurrent sentencing. Therefore, the court denied the second motion to suppress.

On April 5, 2011, a bench trial was held, and the trial court convicted the appellant of five counts of aggravated burglary and six counts of felony theft of property.[3] The trial court merged five theft convictions into their corresponding aggravated burglary convictions and sentenced the appellant as a Range I, standard offender to four years for each conviction. The court ordered that two of the sentences be served consecutively and the remainder concurrently, for a total effective sentence of eight years.

## II. Analysis

The appellant contends that the trial court should have suppressed his statement because it was given as part of an agreement that was unenforceable. The State argues that the appellant is not entitled to relief. We conclude that the trial court should have suppressed the statement.

Initially, we note that both the appellant and the State refer to the initial agreement as a "plea agreement"; however, as the Fourth Circuit Court of Appeals has explained:

> [A] grant of immunity differs from a plea agreement in that it in no way involves court approval. In the case of a plea agreement, the court in essence executes the agreement by accepting the plea of guilty. In the case of a grant of immunity, however, only two parties are involved. The government alone makes a decision not to prosecute in exchange for testimony which will, hopefully, lead to a greater number of indictments or convictions. The most that one granted immunity can do is to agree to testify and then await the call of the government.

Plaster v. United States, 789 F.2d 289, 293 (4th Cir. 1986).

At the time the appellant and the State entered into the initial agreement, the State

---

[3] According to the trial court's written sentencing order, the appellant was convicted of six counts of theft of property valued $10,000 or more, a Class C felony. However, for two of the theft counts, the appellant was indicted for theft of property valued $1,000 or more, a Class D felony. At trial, one of the two victims testified that the value of his stolen property was "right around ten thousand dollars," and the other victim testified that the value of his stolen property was $4,000. In finding the appellant guilty, the court did not address the grading of the thefts. The judgments of conviction reflect that the appellant was convicted of four counts of theft of property valued $10,000 or more and two counts of theft of property valued $1,000 or more.

had not charged the appellant with a crime related to the burglaries. Therefore, the agreement in this case, in which the prosecutor promised not to prosecute the appellant fully in exchange for his truthful information, was a cooperation-immunity agreement. See State v. Howington, 907 S.W.2d 403, 404-05 & n.1 (Tenn. 1995); David G. Housler, Jr. v. State, No. M2010-02183-CCA-R3-PC, 2013 WL 5232344, at *32 (Tenn. Crim. App. at Nashville, Sept. 17, 2013).

Cooperation-immunity agreements, like plea agreements, are enforceable as contracts. Howington, 907 S.W.2d at 408; State v. Spradlin, 12 S.W.3d 432, 435 (Tenn. 2000). However, a cooperation-immunity agreement "is different from the average commercial contract as it involves a criminal prosecution where due process rights must be fiercely protected." Howington, 907 S.W.2d at 410. Initially, the defendant must show the existence of an agreement by a preponderance of the evidence; thereafter, the State bears the burden of showing "'beyond a reasonable doubt why the agreement is invalid or why prosecution should be allowed despite the agreement.'" State v. Jacobs, 919 S.W.2d 639, 643 (Tenn. Crim. App. 1995) (quoting Zani v. State, 701 S.W.2d 249, 254 (Tex. Crim. App. 1985)); see State v. Sudderth, 152 S.W.3d 24, 32 (Tenn. Crim. App. 2004).

Here, the trial court found, and the parties do not dispute, that the appellant and the State entered into an agreement. The terms of the agreement were reduced to writing and specified that the State would charge the appellant with no more than six felonies and that he would receive sentencing concurrent with his previous nine-year sentence. Based on the agreement, the appellant confessed to twenty-eight burglaries. However, the agreement turned out to include an illegal sentence. At that point, the State decided to offer to allow the appellant to plead guilty to misdemeanors so that he could receive concurrent sentencing. The State conveyed the offer to defense counsel, but nothing indicates that defense counsel conveyed the offer to the appellant. Moreover, nothing indicates that the appellant ever accepted the offer. In fact, General Cristil testified at the suppression hearing that the appellant did not accept it. Therefore, we disagree with the trial court's conclusion that the appellant breached the second agreement.

We must now determine the appropriate remedy. The initial agreement provided for an illegal sentence and, therefore, was unenforceable. See McConnell v. State, 12 S.W.3d 795, 799 (Tenn. 2000). Thus, we cannot order specific performance of the contract and must return the parties to the position they were in prior to the agreement, which would not allow use of the appellant's statement. As a result, the trial court should have granted the appellant's motion to suppress.

### III.  Conclusion

Based upon the record and the parties' briefs, we conclude that the trial court erred by failing to grant the appellant's motion to suppress his statement.  Because the State's evidence against the appellant consisted primarily of his confession, the appellant's convictions must be reversed and the case remanded to the trial court for further proceedings consistent with this opinion.

_____
NORMA MCGEE OGLE, JUDGE