328 So.2d 479 (1976)
STATE of Florida, Appellant (State),
v.
Donald E. HARGIS, Jr., and Richard A. Shuler, Appellees (Defendants).
No. X-531.
District Court of Appeal of Florida, First District.
March 19, 1976.
*480 Robert L. Shevin, Atty. Gen., Donald K. Rudser, Asst. Atty. Gen., David H. Bludworth and John Scarola, West Palm Beach, for appellant.
Gary R. Dunham, Asst. Public Defender, and Larry G. Turner, Goldin & Turner, Gainesville, for appellees.
Donald E. Hargis, Jr., and Richard A. Shuler, pro se.
MILLS, Judge.
The state appeals from an order which granted defendants' motion to compel the state to honor an agreement not to prosecute them, and which dismissed two counts of the information which charged the defendants with crimes they contended were covered by the agreement. The sole issue before us is whether the trial court erred in granting the defendants' motion, and in dismissing the two counts of the information.
After several contacts between an undercover narcotics agent and the defendants, the defendants offered to sell the agent one ounce of cocaine. The agent requested a sample to test the quality of the cocaine before purchase. The sample was delivered. On the following day and at the time of the purchase, the defendants were arrested and one ounce of cocaine was seized. After their arrest and after their constitutional rights were given, the agent suggested to the defendants that no charge would be made for the delivery of the sample, if they would disclose their source of cocaine. The agent had authority from the state attorney to make the agreement. The defendants identified their source. The trial court was not informed nor consulted. Although neither the agent nor the state attorney made any charges, an assigned state attorney filed an information against the defendants in which he made two charges arising out of the delivery of the sample. These charges were (1) a conspiracy to deliver cocaine, and (2) possession of cocaine. The defendants moved the trial court to compel the state to abide by its promise of immunity. The testimony adduced at the hearing on the motion indicated that the content of the agreement and the witnesses' recollection and construction of it varied considerably. The trial court granted the motion, and as a result dismissed the two charges arising out of the agreement.
The state contends that there was no immunity agreement, that the agreement was merely not to prosecute for delivery of the sample, and that the agreement could not be pled in bar because it was not approved by the trial court. The defendants contend that there was an agreement not to prosecute, that it covered everything arising out of the delivery of the sample, and that the state should be compelled to honor an agreement made by it.
An immunity agreement, without the consent of the court, may not be pled in bar of adjudication of guilt. Ingram v. Prescott, 111 Fla. 320, 149 So. 369 (1933). The right to immunity is equitable merely, based on the pledge of faith of the public, and does not entitle a defendant to plead the promise of immunity as a bar. Cortes v. State, 135 Fla. 589, 185 So. 323 (1938). Under an agreement between a state attorney and a defendant, made without the consent of the court, a defendant may be placed on trial in violation of the agreement. Ingram v. Prescott, supra.
At first, it appears to be reprehensible that the state would not be compelled *481 to honor its agreement not to prosecute the defendants. However, there are dangers in an unrestricted rule which would empower a state attorney alone to grant immunity from crime to an accused. The content of verbal agreements, such as the one before us, will provide a prolific source of litigation. The recollection of the parties will be imperfect. Misconstruction is easy. A careless word, a misconstrued statement, or a distorted expression will erupt into litigation.
In addition, such an agreement would be made undercover and in secrecy which is frowned upon by our society.
The office of state attorney is one of fine tradition. It is also one of great power. We decline to extend this power. If an extension is to be made, it should be done by the legislature.
Reversed and remanded for further appropriate proceedings.
SMITH, J., concurs.
RAWLS, Acting C.J., dissents.
RAWLS, Acting Chief Judge (dissenting).
The oft quoted statement of Mr. Justice Holmes,[1] viz:
"`If ... "men must turn square corners when they deal with the Government," it is hard to see why the Government should not be held to a like standard of rectangular rectitude when dealing with its citizens.'"
is most applicable in this cause.
In my opinion, the most singular powerful office in this state is that of state attorney.[2] The state attorney has unbridled discretion in electing to institute criminal charges against a citizen or in electing not to institute such charges. Until a jury is sworn, the state attorney has unbridled discretion in entering a nolle prosequi.[3] The immediate query is: Why should the trial court, after taking extensive testimony, be precluded from entering its order which granted the defendant's motion to compel the state to honor its agreement?[4] The State Attorney of the Eighth Judicial Circuit executed an affidavit wherein he stated that he had authorized agents of the "Task Force" to negotiate with suspects or potential defendants for information regarding drug traffic in exchange for promises of either leniency or immunity from prosecution. It was stipulated that the members of the task force had the authority from the state attorney to make such contractual arrangements, and the trial court found that they did enter into such arrangements.[5]
*482 The majority cites Ingram v. Prescott for its statement that: "An immunity agreement, without the consent of the court, may not be pled in bar of adjudication of guilt." (Emphasis supplied.) I am in accord with that conclusion; however, in my opinion it is not here applicable for two reasons: 1) there has been no adjudication of guilt, and 2) the trial court has required the state to live up to its agreement within the rationale of Ingram.
In Ingram the Supreme Court observed that from the earliest times it has been necessary, for the detection and punishment of crime, that the state may contract with a party for his exemption from prosecution with the consent of the court.[6] The Supreme Court then observed that:
"... there is ample ground in the record to support the circuit judge's evident finding that, instead of the state's attorney having entered into any such agreement as the accused relies on for immunity, the defendant agreed to become a witness, and did become a witness solely on his own responsibility...."[7]
Cortes v. State is the other case cited for substantiation of the majority opinion. Cortes, the Supreme Court clearly stated:
"The right to immunity from prosecution is equitable merely, based on the pledged faith of the public, and does not entitle the accomplice to plead the promise of immunity as a bar. He is not entitled to discharge as a matter of right, but must abide by the sound discretion of the Court and prosecuting attorney."[8]
Again, it is emphasized the trial court exercised its sound discretion by enforcing the contract entered into by the authorized agents of the prosecuting attorney.
I would affirm the judgment appealed.
NOTES
[1] Daniell v. Sherrill, 48 So.2d 736 (Fla. 1950), citing 48 Harvard Law Review, 1299.
[2] Article V, Section 17, and Article I, Section 15, Florida Constitution (1968), as amended.
[3] Wilson v. Renfroe, 91 So.2d 857 (Fla. 1956), and State v. Sokol, 208 So.2d 156 (3 Fla.App. 1968).
[4] The trial court stated the following:

"... it boils down to this, I for one, am going to say yes, as to holding the State to a high standard of conduct in matters of this kind. This seems to me a very delicate matter, to say the least. We have here a situation of the State's own making and if you come into the court here with what purports to be an agreement that is so ambiguous that any doubts with respect to that ambiguity I'm going to resolve in favor of the defendants because it's my feeling that the State, in a situation such as this, must conduct itself on a plane as tender as Caesar's wife. I think it's apparent that the intention of these officers was to get the information from these people. I agree it's not clear as to whether the information preceded the promise or vice versa, but I don't think that matters too much. I think we have a situation here that the State itself manufactured and if the defendants in response to it furnished the State with information then I am going to strictly construe it in favor of the defendants. I don't see how we can do otherwise. I'll stand by the ruling that I have previously announced and grant the motion with respect to Counts I and II."
[5] One of the officers testified:

"A. They had already been advised of their rights and we were concerned and felt that from what we found inside the house that it may be possible that it was not their cocaine and it was explained to them that what they said would be off the record, that I had authority to do that by the State Attorney and that it would be held in confidence.
"Q. As a matter of fact, you told them that even though you had Mirandized them, you could turn the Miranda off and on?
"A. Yes.
"Q. You could turn it off where they 
"A. I explained to them that what they said from that point I wouldn't testify against them in court.
.....
"Q. All right. What was explained to them concerning their prosecution for any delivery or any offense arising out of the delivery of 7 October?
"A. It was explained that what we do sometimes is flip people to get information, get cases nol prossed, or not made and that we were very concerned about the source of the cocaine and where it came from, how they got it, et cetera.
"Q. Were they asked to identify their source?
"A. Yes.
"Q. Did they, in fact, identify the source pursuant to that conversation?
"A. Yes."
[6] I consider the trial court's order being reviewed as constituting "the consent of the court."
[7] The record in this case amply supports the circuit judge's finding that the contract of immunity had been entered into.
[8] The courts have for many years invoked the doctrine of equitable estoppel in civil cases against the state. In Daniell v. Sherrill, supra, our Supreme Court quoted with approval from United States v. Stinson, 125 F. 907, 910 (7th Cir.), affirmed 197 U.S. 200, 25 S.Ct. 426, 49 L.Ed. 724, the following:

"The government may not in conscience ask a court of equity to set on foot and inquiry that, under the circumstances of the case, would be an unfair or inequitable inquiry. The substantial consideration underlying the doctrine of estoppel apply to government as well as to individuals."
I am of the firm conviction that a citizen's liberty is far more precious than his property and would unhesitatingly apply the civil rule in criminal proceedings if necessary to compel the state attorney (in this instance the assigned state attorney) to comply with a contract of immunity granted by his agents, especially, when viewed in the light that the state attorney has the unilateral right to prosecute or not prosecute, all without the court's permission.