380 So.2d 1297 (1980)
The STATE of Florida, Appellant,
v.
Ralph W. WEIR, Appellee.
No. 79-1272.
District Court of Appeal of Florida, Third District.
February 26, 1980.
Rehearing Denied April 1, 1980.
Janet Reno, State's Atty. and Theda R. James, Asst. State Atty., Lawrence D. LaVecchio, Certified Legal Intern, for appellant.
Spain & O'Donnell and John Lipinski, Miami, for appellee.
Before BARKDULL, SCHWARTZ and BASKIN, JJ.
SCHWARTZ, Judge.
The defendant-appellee, Ralph Weir, was charged by information with two counts of unlawful solicitation of motor vehicle tort claims, in violation of Sec. 627.7375(8), Fla. Stat. (1977). The trial judge entered an order discharging Weir on the ground that he had been immunized from prosecution under Sec. 914.04, Fla. Stat. (1977). The state appeals. We affirm.
The record shows that Weir was served with a subpoena, issued by the clerk of the circuit court, requiring him to "appear before the State Attorney" and "to testify and the truth to speak," concerning a pending, but unspecified, "INVESTIGATION." When Weir arrived at the state attorney's office in accordance with the subpoena he was told, in essence, that he was the target of the investigation which concerned allegations that he had improperly solicited accident cases for an attorney. The assistant state attorney in charge, James McMaster, at once, however, stated that "before we talk to you, it is necessary that we ask that you waive immunity." He handed Weir a "Waiver of Immunity" form. After Weir had read it, the following occurred:
MR. WEIR: If I sign this Waiver of Immunity, am I liable for anything, or what?
MR. McMASTER: Well, if you sign the Waiver of Immunity, what that means is if you sit here and tell Mr. Coon [an investigator] or myself that you committed a crime, we can charge you with the *1298 crime and use the statement you make against you. [emphasis supplied]
At McMaster's suggestion, Weir called a lawyer to determine whether to execute the waiver. When Weir thereafter told the state attorney that, pursuant to advice of counsel, he would not sign the document, McMaster stated:
MR. McMASTER: Mr. Weir, at this point we are unable to speak to you. Like I said, you have been subpoenaed down here because of an investigation we are conducting, and we are unable to take a statement from you without asking you to sign a Waiver of Immunity. We cannot talk to you unless you sign the waiver. So at this point we are going to conclude the formal statement. Now, I understand your attorneys advised you not to waive immunity; is that correct?
MR. WEIR: That's what he has told me. [emphasis supplied]
Notwithstanding this statement, McMaster continued to speak with the defendant. After telling him that he was releasing him from the subpoena and that he was free to go, the state attorney began a lengthy conversation with Weir in which he solicited his "cooperation" with the investigation. Weir was given something like Miranda warnings and was informed that he was not required to testify. He was never told, however, that, contrary to McMaster's previous statements, he could still be prosecuted as to the subject matter of any testimony even though he did not sign a waiver. It is undisputed that, in fact, Weir never expressly waived immunity from prosecution. At the conclusion of the colloquy,[1] McMaster nevertheless proceeded to question him under oath concerning the very ambulance-chasing incident which formed the basis of the alleged crimes of which he was later accused.
We concur with the trial judge's determination that, on these facts, Weir was immunized by the effect of § 914.04. That statute provides

No person, having been duly served with a subpoena or subpoena duces tecum, shall be excused from attending and testifying or producing any book, paper, or other document before any court having felony trial jurisdiction, grand jury, or state attorney, upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding. [emphasis supplied]
Since Weir indisputably was subpoenaed to, and did give testimony concerning the precise transaction which gave rise to the charges against him, the terms of the statute seem, on their face, rather clearly to apply. See, e.g., Lorenzo v. Blackburn, 74 So.2d 289 (Fla. 1954); Daniels v. Kirkland, 379 So.2d 197 (Fla. 5th DCA 1980); State v. *1299 Brodski, 369 So.2d 366 (Fla. 3d DCA 1979). The state vigorously argues, however, citing such cases as Tsavaris v. Scruggs, 360 So.2d 745 (Fla. 1977); Orosz v. State, 334 So.2d 26 (Fla. 1st DCA 1976) and State ex rel. Foster v. Hall, 230 So.2d 722 (Fla. 2d DCA 1970), that immunity was not conferred because, at the time that Weir testified, he was under no "compulsion" or legal requirement that he do so. We cannot agree.
In the first place, the subpoena involved here, unlike those in the Orosz and Hall cases, specifically required Weir not only to appear but also "to testify" before the State Attorney. While the assistant in charge of the investigation purported to "excuse" the defendant from that requirement, we are cited to and are aware of no authority which suggests that anyone but a judge of the court which issued the subpoena possesses such power. See 35 Fla.Jur. Witnesses § 19 (1961); 81 Am.Jur.2d Witnesses §§ 9, 22 (1976). Thus, Weir testified in obedience to a still-legally-extant command of the court.
In another and even more fundamental way, the present situation also differs from the decisions upon which the appellant relies. In contrast with each of them, the state attorney in this case explicitly told the defendant both that he had the right to refuse to testify and that he could not be questioned without granting him immunity unless he specifically waived that privilege. Weir's subsequent refusal to sign the waiver therefore constituted a specific invocation of his constitutional rights  a claim of privilege which likewise did not occur in any of the cases cited by the state. See 21 Am.Jur.2d Criminal Law § 151 (1965). The statement in State v. Toogood, 349 So.2d 1203, 1204 (Fla.2d DCA 1977), cert. denied, 357 So.2d 188 (Fla. 1978), is therefore directly applicable:
"... [W]e assume the `compulsion' necessary to give rise to any immunity, transaction or use, because of the express finding of the trial court that appellee did not waive immunity which, in turn, necessarily means he did not waive his Fifth Amendment privileges upon which such immunity would be dependent."
As the trial judge cogently observed, the thrust of the state's position in this case is that Weir was not immunized by his testimony, even though it was given after he had expressly declined to waive his rights and after the state attorney had told him that, unless he did so, he could not be questioned without giving him immunity. To accept this position would be to countenance what amounts, however inadvertently, to a governmental breach of faith. This, we decline to do. See State v. Davis, 188 So.2d 24 (Fla. 2d DCA 1966, cert. denied, 194 So.2d 621 (Fla. 1966); State v. Hargis, 328 So.2d 479 (Fla. 1st DCA 1976) (Rawls, J., dissenting); cf. Ciravolo v. The Florida Bar, 361 So.2d 121 (Fla. 1978). When the defendant refused to execute the waiver, McMaster had to fish or cut bait; he had the choice of not taking Weir's statement or granting him immunity. The trial judge correctly held that the state could not have it both ways. Cf. State v. Belien, 379 So.2d 446 (Fla. 3d DCA 1980), and cases cited.
Affirmed.
NOTES
[1] Immediately before Weir was sworn in, McMaster said:

MR. McMASTER:
... it is my understanding that there has been an allegation that you have handed out an attorney's business card at the scene of an accident.
MR. WEIR: Yes, I did.
MR. McMASTER: Of course the question remains as to whether you were trying to solicit business and getting anything from the attorney for doing it or what exactly is going on. That is what we are doing. We are trying to find out.
MR. WEIR: Now that I know, now I can speak with you. [emphasis supplied]
It is clear that McMaster's statement, which obviously brought about Weir's willingness to talk, was entirely misleading as to the elements of the offense with which the defendant could be, and actually later was, charged. We agree with the state, however, that the remedy for the improper inducement of an incriminating statement is its exclusion from evidence. Our holding that immunity was conferred under the circumstances is therefore not based upon this remark.