Jeff Allen Seneca was indicted by the Henry County grand jury on September 22, 1995, for trafficking in cocaine, a violation of § 13A-12-231, Ala. Code 1975. Seneca moved to dismiss the indictment, arguing that the state was estopped from prosecuting him. In this regard, Seneca claimed that law enforcement officers who investigated his case had promised not to pursue the cocaine trafficking charge if he helped them locate a large amount of marijuana that had been hidden by one of Seneca's accomplices. After an evidentiary hearing, the trial court granted Seneca's motion to dismiss, based on its finding that the investigators had, as Seneca claimed, promised Seneca that, in exchange for his cooperation in locating the missing marijuana, he would not be prosecuted for trafficking in cocaine.
The state appeals, contending that the trial court abused its discretion and committed reversible error in dismissing the indictment. The state argues that any promise of nonprosecution made by the investigators was invalid and did not bind the prosecutors.
The record shows that on June 8, 1995, narcotics investigators with the Henry County Sheriff's Department and the Abbeville Police Department executed a warrant to search the residence of Terri Jean Money in Abbeville. Investigators discovered approximately 2 pounds of marijuana and 55 grams of cocaine inside Money's house. Seneca and Money were present in the house when the warrant was executed, and they were arrested and charged with possession of marijuana in the first degree and with trafficking in cocaine. The investigators had obtained the search warrant based in part on a confidential informant's tip that Money and her associates had recently returned from Texas with *Page 749 
a 20-pound shipment of marijuana. Money's residence was placed under surveillance, and on the morning of June 8, 1995, investigators watched her pull her automobile into her driveway, with Seneca and George "Butch" Jarrell as passengers. The three entered the house, with Money carrying a purse and Seneca and Jarrell carrying large tote bags. Jarrell later drove away in his own pickup truck, and he was not present when the warrant was executed.
The investigators believed that the 2 pounds of marijuana found in Money's house was only a small portion of the shipment brought from Texas, and they suspected that Jarrell may have taken the rest of the shipment with him when he left Money's house. Jarrell was arrested at his own house on the evening of June 8, 1995; however, he did not have the "missing" marijuana in his possession.
At the hearing on Seneca's motion to dismiss, Ray Harris, an investigator with the Abbeville Police Department, testified that he interviewed Seneca on June 9, 1995, after Seneca had informed other law enforcement officers that he wanted to speak to Harris about the charges against him. Kenneth Noel Vanlandingham, a narcotics investigator with the Henry County Sheriff's Department, was also present during the interview. Harris testified that Seneca told him that Jarrell had hidden the missing marijuana after leaving Money's house on June 8. According to Harris, Seneca indicated that he might be able to persuade Jarrell to disclose where he had hidden the marijuana, but that he and Jarrell were worried that they would be exposing themselves to further charges if the marijuana was recovered. Harris stated that he then assured Seneca that he and Jarrell would not face additional charges if their cooperation led to the recovery of the marijuana. According to Harris, the quantity of missing marijuana was thought to be large enough to support a trafficking charge, and he specifically told Seneca that he and Jarrell would not be charged with trafficking in marijuana if the marijuana was recovered. The two pounds of marijuana investigators had already recovered from Money's residence, Harris said, was not sufficient to support a charge of trafficking. Harris testified that his promise of nonprosecution was extended only to a potential marijuana trafficking charge and that he made absolutely no assurances to Seneca that his assistance in locating the missing marijuana would have any effect on the charges of trafficking in cocaine and possession of marijuana in the first degree that had been brought against Seneca for the drugs found in the search of Money's residence.
Harris maintained that his primary motivation for extending the nonprosecution offer to Seneca was to recover the missing marijuana before it was dispersed in the community. He stated that Seneca spoke to Jarrell after the interview on June 9, 1995, and that later that same day, Jarrell told law enforcement officers where he had hidden the remainder of the marijuana. Jarrell then led the officers to the marijuana, a parcel weighing almost 18 pounds, which he had hidden in a location near the Dale County/Henry County line.
The record shows that neither Seneca nor Jarrell was ever charged with trafficking in marijuana. However, Seneca maintains that Harris promised him during the June 9, 1995, interview that if he assisted investigators in locating the missing marijuana, he would not be prosecuted on any trafficking charges, i.e., that not only would he not be charged with trafficking in marijuana for the additional marijuana when it was recovered, but that the pending charge of trafficking in cocaine would also be dropped.
At the hearing, both Harris and Vanlandingham denied that Seneca was told that the cocaine trafficking charge would be dropped in exchange for his help in locating the missing marijuana. Seneca introduced into evidence at the hearing an audiotape of a telephone conversation he had with Vanlandingham in August 1995, several months after Seneca's arrest and a month before he was indicted. In the taped conversation, Vanlandingham assures Seneca that "we ain't going to leave you hanging out to dry" and tells Seneca that he would not be prosecuted for any "poundage." Although there is no specific reference in the taped conversation to either marijuana or cocaine, the trial *Page 750 
court construed Vanlandingham's remarks to pertain to charges for both cocaine trafficking and marijuana trafficking. Finding that the state had promised Seneca that it would not pursue the cocaine trafficking charge if he helped locate the missing marijuana, the trial court granted Seneca's motion to dismiss the indictment for trafficking in cocaine.
On appeal, the state contends that the trial court misconstrued the import of Vanlandingham's remarks to Seneca in the taped conversation. The state further contends that even assuming that Vanlandingham and Harris did promise Seneca that the charge for trafficking in cocaine would not be pursued in return for Seneca's assistance in locating the missing marijuana, any such promise was invalid and not legally binding. We agree; Seneca was not entitled to a dismissal of the indictment on this ground.
In State v. Sealy, [Ms. CR-96-0881, October 17, 1997] ___ So.2d ___ (Ala.Cr.App. 1997), Judge Patterson, writing for the court, stated:
 "There is no statutory provision for a general grant of immunity from criminal prosecution under the laws of Alabama. Alabama is one of a number of states that do not have a general statute authorizing prosecuting attorneys to grant immunity from prosecution. Ex parte Graddick, 501 So.2d 444 (Ala. 1986); Ex parte Johnsey, 384 So.2d 1189
(Ala.Cr.App.), cert. denied, 384 So.2d 1191 (Ala. 1980). However, prosecuting attorneys and judges are not forbidden from granting an accused immunity from prosecution for criminal offenses in exchange for truthful testimony as a state witness against others accused of crimes. Gipson v. State, 375 So.2d 504
(Ala.Cr.App. 1978), aff'd, 375 So.2d 514 (Ala. 1979). `Grants of immunity play a vital role in the performance of the duties of prosecuting attorneys, and without this method of obtaining valuable testimony prosecuting attorneys would be severely hampered in their efforts to gain convictions.' Ex parte Graddick, 501 So.2d at 446. Nonstatutory grants of immunity can be valid in Alabama if they follow the guidelines established in Ex parte Graddick, i.e., the grant of immunity must be signed by the district attorney and approved by the trial judge. `Law enforcement officers are without question totally lacking in power to authorize or grant immunity from arrest or prosecution to one criminally culpable under the laws of this state.' Yarber v. State, 368 So.2d 868 (Ala.Cr.App.), cert. denied, 368 So.2d 871 (Ala. 1978). `Breach of such a promise' of immunity by a law enforcement officer `cannot be pled in bar of an indictment, as grounds for dismissal of the prosecution, or as grounds for reversal on appeal.' Id., 368 So.2d at 869-70. See also Long v. State, 86 Ala. 36, 5 So. 443 (1889). `Alabama has not embraced the estoppel theory to uphold non-statutory grants of immunity.' Mayberry v. State, 419 So.2d 262, 265 (Ala.Cr.App. 1982). See Gipson v. State, supra. See also Yarber v. State, 375 So.2d 1212 (Ala.Cr.App. 1977), rev'd on other grounds, 375 So.2d 1229, on remand, 375 So.2d 1231
(Ala.Cr.App. 1978), rev'd, 375 So.2d 1231 (Ala. 1979), on remand, 375 So.2d 1236 (Ala.Cr.App. 1979)."
___ So.2d at ___.
Thus, under Alabama law, any promise not to prosecute by Harris or Vanlandingham was invalid and was not binding upon the state.Sealy, ___ So.2d at ___. See Mayberry v. State, 419 So.2d 262,265-66 (Ala.Cr.App. 1982); Yarber v. State, 375 So.2d 1212,1227 (Ala.Cr.App. 1977), rev'd on other grounds,375 So.2d 1229, on remand, 375 So.2d 1231 (Ala.Cr.App. 1978), rev'd,375 So.2d 1231 (Ala. 1979), on remand, 375 So.2d 1236 (Ala.Cr.App. 1979); Yarber v. State, 368 So.2d 868, 869-70 (Ala.Cr.App.),cert. denied, 368 So.2d 871 (Ala. 1978). Although the trial court found that the investigators had promised Seneca that in exchange for his cooperation in locating the missing marijuana, he would not be prosecuted for trafficking in cocaine, that finding does not warrant a dismissal of the indictment for trafficking in cocaine. The state was not estopped from indicting and prosecuting Seneca, and the trial court erred in granting the motion to dismiss the indictment. The most Seneca would be entitled to is the suppression of any incriminating evidence as to the cocaine trafficking charge that the state acquired as a *Page 751 
result of promising Seneca that he would not be prosecuted on that charge if he assisted in locating the missing marijuana. SeeSealy, ___ So.2d at ___. We are unable to tell from the record what evidence, if any, the state acquired as to the cocaine trafficking charge as a result of Seneca's assistance in locating the missing marijuana.
For the reasons we have stated, dismissal of the indictment was inappropriate. Accordingly, the trial court's judgment dismissing the indictment is reversed, and the cause is remanded with directions that the trial court set aside its judgment of dismissal and restore the indictment to the court docket for appropriate proceedings.
REVERSED AND REMANDED.
McMILLAN, COBB, BROWN, and BASCHAB, JJ., concur.