IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE



**FILED**

**January 31, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | FOR PUBLICATION |
| | ) | |
| Appellee, | ) | FILED:  JANUARY 31, 2000 |
| | ) | |
| v. | ) | BLOUNT COUNTY |
| | ) | |
| DANNY SPRADLIN, | ) | HON. D. KELLY THOMAS, JR., JUDGE |
| | ) | |
| Appellant. | ) | NO. E1995-00019-SC-R11-CD |


For Appellant:                           For Appellee:

KEVIN W. SHEPHERD                     JOHN KNOX WALKUP
Maryville, TN                         Attorney General and Reporter

                                      MICHAEL E. MOORE
                                      Solicitor General

                                      KIM R. HELPER
                                      Assistant Attorney General
                                      Nashville, TN

                                      MICHAEL L. FLYNN
                                      District Attorney General

                                      PHILIP H. MORTON
                                      Asst. District Attorney General
                                      Maryville, TN


OPINION


AFFIRMED                                              BIRCH, J.

                                                                I

We accepted review of this case in order to determine whether an agreement not to prosecute made between Danny Spradlin, the appellant, and two officers[1] is enforceable without the district attorney general's[2] knowledge or approval. We conclude that a district attorney general has the sole duty, authority, and discretion to prosecute criminal matters in the State of Tennessee.[3] Police officers are, therefore, without authority to bind the district attorney general to an agreement not to prosecute. In this case, because the district attorney general neither authorized nor ratified the agreement between Spradlin and the officers, the agreement is unenforceable, and the judgment of the Court of Criminal Appeals is affirmed.

                                                                II

In a Blount County bar on October 1, 1992, Spradlin sold marijuana to a person who was, unbeknownst to him, working as a confidential informant for the Blount County Sheriff's Office. The

_____

[1]The term "officer" is meant to include police officers and other law enforcement personnel. For example, detectives, sheriffs, deputy sheriffs, any agent of the police department, and any agent of the sheriff's department would be classified generically as an "officer" for purposes of their future compliance with this opinion.

[2]The term "district attorney general" is meant to include not only the one elected official designated as such in each Tennessee county, but also "assistant district attorneys general" who are lawyers employed as agents of the district attorney general.

[3]The district attorney general's power to prosecute is separate from the grand jury's power to indict, in that "the grand jury is not an agency of the district attorney general . . . ." Parton v. State, 2 Tenn. Crim. App. 626, 455 S.W.2d 645 (1970); see also Tenn. R. Crim. P. 6. The grand jury may indict an accused for any "indictable or presentable offense[] found to have been committed or to be triable within the county." Tenn. R. Crim. P. 6(d). Additionally, the grand jury may indict an accused after an investigation conducted on its own initiative. See id.

                                2

confidential informant did not purchase marijuana directly from Spradlin; an intermediary arranged the transaction.

On three other occasions (November 20, 1992; November 24, 1992; and December 2, 1992), the informant bought marijuana directly from Spradlin. On December 18, 1992, Spradlin was arrested and charged with distributing less than one-half ounce of marijuana[4] in connection with the October 1, 1992, transaction. No other charges were lodged against Spradlin at that time.

Spradlin retained an attorney who spoke with the two officers in charge of the investigation. The officers told the attorney about the three drug sales upon which prosecution had not yet been initiated. Without obtaining any authorization from the district attorney general, the officers told Spradlin's attorney that if Spradlin would work as a confidential informant for the sheriff's department, he would not be prosecuted on the three as yet uncharged drug sales. Spradlin pleaded guilty to the single misdemeanor charge[5] on January 4, 1993. No agreement concerning the three uncharged drug sales was presented to the court with this guilty plea.

After he pleaded guilty to the misdemeanor, Spradlin proceeded to act as a confidential informant for the sheriff's department. Spradlin made three drug purchases pursuant to the agreement before his identity was compromised, thereby ending the confidential operation. On August 9, 1993, Spradlin was indicted on the three previously uncharged drug sales.

---

[4]Tenn. Code Ann. § 39-17-418(b) (1990).

[5]Spradlin does not suggest that his guilty plea of January 4, 1993, was induced or obtained in reliance on the officers' promise not to prosecute him for the three as yet uncharged drug sales. The record indicates that Spradlin pleaded guilty to the misdemeanor drug distribution charge in exchange for a sentence of unsupervised probation.

3

At the motion to dismiss hearing preceding his trial, Spradlin was asked if he personally ever had any discussion with anyone in the district attorney general's office concerning the immunity/nonprosecution agreement with the officers. In response to this question, Spradlin stated: "I had an agreement through my attorney which was through Blount Metro. I thought that was enough." Indeed, Spradlin's attorney testified that he never talked to the district attorney general or anyone in the district attorney general's office regarding an agreement between Spradlin and the officers. Additionally, at a jury-out hearing, an officer[6] testified that when Spradlin pleaded guilty to the misdemeanor charge in January 1993 no mention of the immunity/nonprosecution agreement was made to the district attorney general or to any assistant district attorney general.

Following a jury trial, Spradlin was convicted of two counts of felonious possession of marijuana with intent to sell[7] and one count of misdemeanor possession of less than one-half ounce of marijuana.[8] The trial court imposed one-year sentences for each of the felony convictions and an eleven-month twenty-nine day sentence for the misdemeanor. The sentences ran concurrently and were suspended, except for the first sixty days to be served in custody. Additionally, Spradlin was placed on supervised probation for twenty-two months. At the hearing accompanying Spradlin's motion for a new trial, the trial judge stated:

> [r]ightly or wrongly, I decided that
> I hadn't heard evidence that
> established in my mind [that] there
> was an agreement by the State not to
> prosecute these three cases and that

---

[6]The officer who testified during the jury out hearing was one of the officers with whom Spradlin had entered into the immunity/nonprosecution agreement.

[7]Tenn. Code Ann. § 39-17-417 (1992).

[8]Tenn. Code Ann. § 39-17-418(b) (1990).

4

> [the power to authorize immunity or
> nonprosecution agreements] was the
> sphere of influence or the authority
> of the [district] [a]ttorney
> [g]eneral . . . not law enforcement.

(emphasis added). On direct appeal, the Court of Criminal Appeals affirmed these convictions and sentences. We accepted review of this case to decide whether an agreement of immunity from prosecution, entered into between officers and a defendant, is enforceable.


III


When initially presented with the question of whether immunity agreements between officers and a defendant are enforceable, this Court has previously held that a defendant who "'testifies or agrees to testify on behalf of the prosecution . . . with the understanding or promise, express or implied, that he [or she] will . . . not be prosecuted for his [or her] offense'" is not entitled to "'immunity as a matter of right; and such facts may not be pleaded in bar of a prosecution.'" Bruno v. State, 192 Tenn. 244, 249-50, 240 S.W.2d 528, 530 (1951) (citation omitted). In Bruno, a detective told Bruno that he would not be prosecuted for his role in stealing some lead if he would reveal the location of the stolen lead. Bruno, 240 S.W.2d at 529. Bruno then disclosed the location of the contraband. Id. Despite having kept his part of their agreement, Bruno was later prosecuted for his role in the theft. Id. at 530. On appeal to this Court, Bruno's conviction was upheld. Id. at 531.

Although in Bruno we refused to enforce the agreement between the officer and the defendant, the opinion suggested that there may one day be circumstances under which an agreement not to prosecute made between a defendant and a district attorney general

5

could be honored.  See id.  Indeed, the Court stated: "[n]ormally where such a promise is made in good faith and the party . . . cooperates and gives the State the necessary assistance[,] the district attorney general may with the consent of the trial court[9] take care of the matter . . . ."  Id.

A subsequent decision of this Court held that plea agreements and immunity agreements between prosecutors[10] and defendants were enforceable as contracts.  State v. Howington, 907 S.W.2d 403, 408 (Tenn. 1995).  In so holding, Howington expressly overruled Bruno "to the extent that it c[ould] be read as precluding judicial enforcement of immunity agreements under all circumstances."  Id. at 406 n.5.  Howington expressly declined to rule on the question of "whether agreements entered into by a police officer and a defendant are enforceable . . . until the question is again squarely presented."  Id. at 408 n.10 (emphasis added).  The validity of such agreements between officers and defendants is now squarely presented for our consideration.

IV

We begin with the well-settled law and custom that a district attorney general has the sole duty, authority, and discretion to prosecute criminal matters.  Ramsey v. Town of Oliver Springs, 998 S.W.2d 207, 209-10 (Tenn. 1999); see Tenn. Const. art. VI, § 5; Tenn. Code Ann. § 8-7-103 (1993).  Though the prosecutor's authority to prosecute is not absolute, "'[s]o long as the prosecutor has probable cause to believe that the accused committed an offense, *the decision whether to prosecute, and what charge to*

_____

[9]Obviously, the consent of the trial court is unnecessary until after the district attorney general has chosen to initiate prosecution of the offense.

[10]We use the term "prosecutor" interchangeably with the term "district attorney general."

*bring . . . generally rests entirely within the discretion of the prosecution. . . .'"* <u>Ramsey</u>, 998 S.W.2d 210 (emphasis in original) (quoting <u>State v. Superior Oil, Inc.</u>, 875 S.W.2d 658, 660 (Tenn. 1994)).


V


Though this Court has not considered the validity of an immunity or nonprosecution agreement between an officer and a defendant since deferring that analysis in <u>Howington</u>, other jurisdictions have considered the issue.  The clear rule is that police officers do not possess the authority to bind prosecutors to unauthorized immunity or nonprosecution agreements made between police officers and defendants.  <u>Tabor v. State</u>, 333 Ark. 429, 971 S.W.2d 227 (1998); <u>State v. Russell</u>, 671 A.2d 1222 (R.I. 1996); <u>Commonwealth v. Stipetich</u>, 539 Pa. 428, 652 A.2d 1294 (1995); <u>State v. Sharpless</u>, 189 W. Va. 169, 429 S.E.2d 56 (1993); <u>People v. Gallego</u>, 430 Mich. 443, 424 N.W.2d 470 (1988); <u>State v. Seneca</u>, 726 So. 2d 748 (Ala. Crim. App. 1998); <u>State v. Reed</u>, 75 Wash. App. 742, 879 P.2d 1000 (1994); <u>Green v. State</u>, 857 P.2d 1197 (Alaska Ct. App. 1993); <u>Winkles v. State</u>, 40 Md. App. 616, 392 A.2d 1173 (1978);  <u>State v. Hargis</u>, 328 So. 2d 479 (Fla. Dist. Ct. App. 1976); <u>see also</u> Jay M. Zitter, Annotation, <u>Enforceability of Agreement by Law Enforcement Officials Not to Prosecute if Accused Would Help in Criminal Investigation or Would Become Witness Against Others</u>, 32 A.L.R. 4th 990 (1984); 21 Am. Jur. 2d <u>Criminal Law</u> § 290 (1998); David J. Lekich, <u>Broken Police Promises: Balancing the Due Process Clause Against the State's Right to Prosecute</u>, 75 N.C. L. Rev. 2346 (1997).

Consistent with the weight of authority, we hold today that the enforceability of an immunity or nonprosecution agreement

entered into between an officer and an alleged defendant is subject to the discretion of the district attorney general.

Our decision finds strong support in public policy considerations. As one court aptly explained:

> [B]y enforcing the unauthorized promise made to [a] defendant, this Court would undermine the accountability built into the prosecutorial function. Unlike a [p]olice officer, the [prosecutor] is an elected official and thus accountable to the county's electorate for [his or her] actions. Since the police possess neither the authority to withhold prosecution nor to grant immunity, no formal system exists by which to check the potentially unbridled discretion the police would possess if allowed to make binding promises precluding prosecution. The potential for abuse seems obvious.

Gallego, 424 N.W.2d at 473. Additionally, this Court is concerned that enforcement of unauthorized promises between officers and defendants would raise serious questions about the officers' power to manipulate the criminal justice system. See id. at 474. For example, if officers were allowed to make unauthorized, yet binding, promises that preclude prosecution of a defendant, might they then decide that they had the authority to make binding plea bargains or sentencing offers as well? See id. We cannot condone officers entering into binding immunity or nonprosecution agreements with defendants; to do so would implicitly approve an ad-hoc system of criminal justice administered by non-elected, albeit sworn, public officials. See id.

A related consideration is the potential for endless litigation and confusion that unauthorized agreements between officers and defendants would create. As one court noted, "[t]he content of verbal agreements . . . will provide a prolific source

8

of litigation.  The recollection of the parties will be imperfect.
Misconstruction is easy.   A careless word, a misconstrued
statement, or a distorted expression will erupt into litigation."
Hargis, 328 So. 2d at 481.

VI

The Tennessee Rules of Appellate Procedure provide that
"review of findings of fact by the trial court in civil actions
shall be de novo upon the record of the trial court, accompanied by
a presumption of the correctness of the finding, unless the
preponderance of the evidence is otherwise."  Tenn. R. App. P.
13(d).  Though the instant case is a criminal case, this Court has
recently held the standard espoused by Tenn. R. App. P. 13(d)
applicable to a trial court's findings of fact in a suppression
hearing in a criminal case.  State v. Odom, 928 S.W.2d 18 (Tenn.
1996).  In the case at bar, the trial judge made findings of fact
based on testimony offered at both Spradlin's motion to dismiss
hearing and a jury-out examination conducted during trial.  As
would a trial judge in a suppression hearing, the trial judge in
this case evaluated the credibility of witnesses, the weight and
value of evidence, and resolved conflicts of evidence.  See id.
Thus, analogously, we will apply the Tenn. R. App. P. 13(d)
standard of review in our analysis of the issues pertinent to this
case.[11]

VII

---

[11]We note that this standard of review is especially applicable
in the case at bar, because the jury heard no testimony on the
issue of whether the district attorney general authorized the
agreement between Spradlin and the officers.  The trial judge,
however, heard testimony on this issue during the hearing
accompanying Spradlin's motion to dismiss and during the jury-out
examination of one of the officers.  Thus, in this case, it would
be inaccurate to apply a standard of review based on the jury's
findings.

9

In the instant case, the record amply supports the conclusion that there was an agreement between Spradlin and the officers. It also appears from the record that Spradlin attempted to perform his part of the agreement. However, we need make no further inquiry into this factual issue. Instead, we focus on whether the record indicates that the district attorney general authorized the agreement.

Our review of the pertinent facts shows that Spradlin never discussed his immunity/nonprosecution agreement with anyone in the district attorney general's office. Indeed, Spradlin never said that he had. In fact, he admitted that his reliance on the immunity/nonprosecution agreement was premised on his belief that he had an "agreement through [his] attorney which was through Blount Metro."

Additionally, following the hearing on the motion for a new trial, the trial court made a factual finding that the State (acting through the district attorney general's office) never authorized the immunity/nonprosecution agreement with Spradlin. The evidence in the record does not preponderate against this finding. On appeal, this Court will not disturb a factual finding of the trial court unless the record indicates that the evidence preponderates against such a finding. See Tenn. R. App. P. 13(d). As such, this Court will not disturb the trial court's finding that the district attorney general did not authorize the agreement between Spradlin and the officers.

Without authorization from the district attorney general, the officers had no authority to enter into an immunity or nonprosecution agreement with Spradlin. Though the record indicates that Spradlin acted in good faith and relied on his

agreement with the officers, enforcement of the agreement is not a remedy available to him.

VIII

For the foregoing reasons, the judgment of the Court of Criminal Appeals is affirmed. The costs of this appeal are taxed to Spradlin.

_____

ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, C.J
Drowota, Holder, Barker, JJ.